UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS


|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br><br>vs.<br><br>ANTHONY M. HAMILTON,<br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>) Criminal Action<br>) No. 11-10133-RWZ<br>)<br>)<br>)<br>) |


**SENTENCING HEARING**


BEFORE THE HONORABLE RYA W. ZOBEL
UNITED STATES DISTRICT COURT JUDGE


UNITED STATES DISTRICT COURT
John J. Moakley U.S. Courthouse
Boston, Massachusetts 02210
October 8, 2014
9:30 a.m.


\*   \*   \*   \*


CATHERINE A. HANDEL, RPR-CM, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5205
Boston, MA 02210
(617) 261-0555

2    APPEARANCES:

3

     For the Plaintiff:

4

     UNITED STATES ATTORNEY'S OFFICE

5     (By: AUSA Kenneth G. Shine)
          John J. Moakley Courthouse

6          One Courthouse Way, Suite 9200
          Boston, MA 02210

7

8

     For the Defendant:

9

     FEDERAL PUBLIC DEFENDER OFFICE

10    (By: Stylianus Sinnis, Esq.)
          51 Sleeper Street

11         5th Floor
          Boston, MA 02210

12

13

     FEDERAL PROBATION SERVICES

14    By:    Jennifer D. Sinclair
          John J. Moakley Courthouse

15         One Courthouse Way, Suite 1200
          Boston, MA 02210-3027

16

17

18

19

20

21

22

23

24

25

```
1                        P R O C E E D I N G S

2              (The following proceedings were held in open court

3    before the Honorable Rya W. Zobel, United States District Judge,

4    United States District Court, District of Massachusetts, at the

5    John J. Moakley United States Courthouse, 1 Courthouse Way,

6    Boston, Massachusetts, on October 8, 2014.

7              The defendant, Anthony M. Hamilton, is present with

8    counsel.  Assistant United States Attorney Kenneth G. Shine is

9    present.)

10             THE COURT:  Good morning.  Please be seated.

11             COURTROOM DEPUTY CLERK URSO:  This is the United

12   States versus Anthony Hamilton.  It's Criminal 11-10133.  If

13   counsel could please identify themselves for the record.

14             MR. SHINE:  Your Honor, good morning.  Kenneth Shine.

15   I appear on behalf of the United States.

16             MR. SINNIS:  Good morning, your Honor.  Stylios

17   Sinnis on behalf of Mr. Hamilton.

18             THE COURT:  All right.  There were no objections to

19   the presentence report.  I have a sentencing memo by the

20   defendant.  I have not received anything by the government.

21             MR. SHINE:  That's correct.

22             THE COURT:  You didn't file one?

23             MR. SHINE:  I did not.

24             THE COURT:  The presentence report, given the 924(c)

25   charge and the defendant's status as a Career Offender, ends
```

1    up with a Total Offense Level of 34, I think, as a Career

2    Offender and Category VI, and the Total Offense Level -- I

3    mean, the sentence for that, I guess, according to the

4    Guidelines, goes up to 235 months.  The Guideline Range is 188

5    to 235 months, and there is for the 924(c) count the

6    requirement of a consecutive ten-year sentence to whatever the

7    other three counts get.  That's how I understand it.

8             MR. SHINE:  I agree with your view of the Guidelines,

9    your Honor.

10             THE COURT:  Mr. Shine, I'll hear you.

11             MR. SHINE:  Your Honor, this is -- as the Court knows

12    and which --

13             THE COURT:  I'm sorry?

14             MR. SHINE:  You patiently sat through countless

15    motions and hearings.  So, the Court is very familiar with the

16    fact pattern.  It was a bank robbery.  A gun was taken out.

17    Following the bank robbery, there was an escape.  The gun was

18    discharged.  There were a number of motions that were filed.

19             This is a very difficult, if not disturbing, case.

20    Mr. Hamilton is a young man, but in a very short period of

21    time, this young man has accomplished -- or accumulated a

22    significant criminal history.  If it were not for the efforts

23    of his counsel, he would be facing a minimum mandatory

24    sentences that start at 25 years because initially he was

25    classified as an Armed Career Criminal, which would have

```
1    started the sentence at 15, and then with the gun would have

2    been 25, is the minimum mandatory that he's looking at.  His

3    counsel has been able to have one of those convictions

4    overturned and which was the right thing to have done.  I've

5    looked at the case.  It wasn't the strongest case and probably

6    shouldn't have resulted in a conviction, and that was done and

7    I feel good about that.  What I don't feel good about --

8              THE COURT:  I'm sorry.  What was done?

9              MR. SHINE:  It was revoked in the state court, a

10   conviction --

11             THE COURT:  The Armed Career --

12             MR. SHINE:  -- a conviction which would have been a

13   predicate which would have really bound everybody's hands, and

14   I think the right thing was done by counsel by having it

15   removed.  I feel good about that.

16             What I don't feel good about is his criminal history,

17   the number of points -- I mean, starting as a juvenile, armed

18   robbery cases, gun cases, drug cases, armed robbery,

19   distribution.  It just goes on and on and on, and I don't know

20   when it would stop, but I think it stopped the day that the

21   state police, with the FBI, arrested him at home and found him

22   to be in possession of the gun months after the robbery.

23             I suggest to you, Judge, with unfortunate pessimism,

24   that had that not happened, I don't think Mr. Hamilton would

25   be here today.  I think he would have killed himself.  I think
```

1    he would have killed somebody else.  He was going down this

2    path with violence, with drugs, with guns, hanging out with a

3    bad crew.  He just wasn't doing anything to improve himself,

4    and this is what faces us here today.

5            The Guidelines are onerous.  305 months is a minimum

6    sentence under the Guidelines.  It's not mandatory.  It's

7    advisory.  The robbery standing alone, based on his record,

8    would provide a sentence of 188 to 235 months.  That would,

9    coupled with the discharge of the firearm -- had he not fired

10   the gun, had he only brandished the gun -- all these things

11   wouldn't have happened had he not taken the step.  In this

12   case he fired the gun.  Nobody was injured, and he escaped.

13   He was found weeks later with the gun hiding in an upstairs

14   bedroom.

15           I think the Guidelines are a good starting point as

16   to where the case should go.  I think a recommendation at the

17   low end of the Guidelines is appropriate.  I recognize the

18   onerous nature of it, but I think it's appropriate under the

19   circumstances, and I don't say this lightly.  I don't want to

20   stand here and throw these huge numbers at you.  I don't -- it

21   doesn't make me happy that that's where I'm at.

22           We had discussed at some point a plea agreement.  A

23   plea agreement never came to fruition.  I was being very

24   candid in the plea agreement.  I was recommending a sentence

25   of 20 years.  I was willing to dismiss cases to get to that

1   point because I've got some hope for this young man, but that

2   never came to fruition.

3         I think the Guidelines are appropriate.  I think you

4   need to impose a lengthy sentence, an extended term of

5   supervised release, mandatory $200 special assessment, and

6   then there's a forfeiture allegation that needs to be acted

7   upon.

8         THE COURT:  How do you get $200?  Weren't there four

9   counts?

10        MR. SHINE:  I'm sorry, four counts.

11        I don't believe Mr. Hamilton is in a position to pay

12   any type of fine.

13        And I have to tell you, I'm sincere, I hope the best

14   for this young man, but what's placed us here today -- I mean,

15   at a certain point you say enough is enough.  We can't take

16   any more.  He can't continue.  He was going on that track.

17   So, today it ends.  Thank you.

18        THE COURT:  So, your ultimate recommendation is ten

19   years on Counts 1, 2 and 3, and consecutive ten years on --

20        MR. SHINE:  No.  My ultimate recommendation is 180

21   months -- 188 months on Count 1 robbery, followed by the ten

22   years.  The Career Offender -- I ask you to look at him as a

23   Career Offender and then sentence him as a Career Offender,

24   time on and after.  So, it would be the low end of the

25   Guidelines.

```
1              THE COURT:  Wait a minute.  Say that again.  As I
2      counted, you come up to 25 years; is that correct?
3              MR. SHINE:  No.  25 years -- yes, comes out to 25
4      years, yes.
5              THE COURT:  So, you're recommending a sentence of 25
6      years, not 20 years?
7              MR. SHINE:  Not 20 years.  What I said was in the
8      proposed plea agreement there was a discussion of 20 years,
9      was what I was recommending in the plea agreement, but that
10     never came to fruition.
11             THE COURT:  All right.
12             MR. SHINE:  Thank you, your Honor.
13             THE COURT:  Mr. Sinnis.
14             MR. SINNIS:  Thank you, your Honor.
15             There's no dispute on the facts and, indeed, Mr.
16     Hamilton has admitted fully to what he did, his participation
17     in this robbery, but a sentence even remotely where the
18     government has ended up today is certainly not reasonable.
19             Mr. Hamilton walked into a bank and handed a note to
20     the teller, starting out as a kind of routine -- I'm not
21     minimizing it, but a routine note job bank robbery.  He gets
22     locked in a vestibule area and he fires off five rounds.
23     Those are fired out into the street, not back into the bank.
24     I think that's significant because there's no one in the
25     parking lot area when he discharged that firearm.  So, the
```

1   risk of injury to anybody was minimal and, in fact, nobody was

2   injured.  He leaves the bank and then he's arrested some

3   months later.  Your Honor heard the facts at the suppression

4   hearing.

5          Mr. Hamilton was 24 years old when he committed that

6   offense.  His Career Offender predicates took place five days

7   apart when he was 19 years old.

8          I'm not sitting here today asking you to impose a

9   modest sentence.  I'm asking you to impose a twelve-year

10   sentence, which is a very lengthy period of incarceration, and

11   I'm asking you to do that for basically three reasons:

12          One, who Mr. Hamilton is today as he sits here; two,

13   other cases of similar nature that have been prosecuted in

14   this building and the sentences that have resulted from them;

15   and also what the Guidelines would be if your Honor looked at

16   some other factors, and I think I'd like to start with the

17   Guidelines.

18          Mr. Hamilton -- if you look at the bank robbery,

19   armed bank robbery, which is really the -- in my opinion, the

20   discharged -- he's going to get ten years for that.  He's

21   going to get ten years for the discharge of the firearm.  Your

22   Honor doesn't have any discretion on that, but the armed bank

23   robbery, under the Sentencing Guidelines, if he discharged a

24   firearm, his sentencing range in Criminal History Category VI,

25   which he is even after the Career Offender Guideline, would be

1    100 to 125 months.  That is what the Sentencing Commission has

2    determined that someone in the most serious Criminal History

3    Category who walks into a bank and discharges a firearm --

4    that is what the Sentencing Commission, not me, but the

5    Sentencing Commission has said is a reasonable sentence, 100

6    months to 125 months for all of the conduct that was done in

7    this case and that is what they determined to be a reasonable

8    sentence.

9           Similarly -- I think I wrote this in my memo, but

10   before I get there, the one thing I was thinking about,

11   actually, as I was walking across the street this morning is

12   what would the bank robbery be without the discharge?  Because

13   in a certain sense, what I wrote in my memo is almost double-

14   counting for Mr. Hamilton because he's going to get ten years

15   for the discharge of the firearm.

16          So, what would his bank robbery Guideline be if you

17   didn't add the seven points in for the discharge of the

18   firearm because you're going to take that into account when

19   you give him ten.  His Guideline Range would be 51 to 63

20   months.  So, if you added ten years on and after that, you

21   basically get a 14-year sentence at the low end of the

22   Guideline Range.

23          Similarly, if you say I don't want to calculate his

24   Guidelines under the armed bank robbery, even though that's

25   the most serious offense here, and I want to do it under the

1    firearm, as I've indicated in my memo, his Guideline Range

2    would be 188 to 235 months, basically 15 and a half years at

3    the low end.

4          What I'm struggling with today is Mr. Hamilton was an

5    Armed Career Criminal for the first three years of this case,

6    and we had discussions with the government.  I met with Mr.

7    Shine.  I met with other people in the prosecutor's office.

8    An agreement to a 17-to-20 range of a (c) plea to your Honor

9    was discussed.  The government would have to dismiss the

10   924(c) charge to get there.

11         I then went into state court and was able to vacate

12   the conviction, and Mr. Hamilton and I had some conversations.

13   I went back to the government, said now that he's not an Armed

14   Career Criminal, can we talk about a range that is perhaps

15   lower than 17 to 20?  Their response was no.

16         Mr. Hamilton then had to make a decision, do you

17   plead straight up or do you still take the plea agreement of

18   17 to 20.  After consulting with me and discussing his various

19   options, also, with all candor to your Honor, the ability to

20   appeal your Honor's decision on the motion to suppress, which

21   we preserve, he decided to plead straight up because he would

22   have to waive that 17 to 20.  So, I'm struggling a little

23   bit --

24         THE COURT:  He can still appeal the suppression.

25         MR. SINNIS:  He can now, yes, because he pled

1    straight up.

2         So, I'm struggling a little bit with why now a

3    sentence of 305 months is necessary for Mr. Hamilton when he's

4    no longer an Armed Career Criminal.  The 924(c) charge doesn't

5    even have to be dismissed.  So, I don't understand how a

6    changed circumstance that is positive for Mr. Hamilton results

7    in a government recommendation that's quite more lengthy than

8    what was under the plea agreement.

9         So, I think if you look at all of the Guidelines and

10   you look at the conduct, I think a reasonable sentence is

11   twelve years.  I think that's perfectly reasonable.  It's

12   above what the armed bank robbery Guideline is and it's

13   slightly below what the firearm discharge would be if he was

14   calculated under that Guideline.

15        But I think, importantly, you got to look at other

16   cases in this building and what the government has recommended

17   and what other judges in this building have sentenced to.  I

18   think there are a couple cases.  I cite many, but I think a

19   couple that are the closest to this fact pattern.

20        One is the case of Mr. LePage.  Mr. LePage was

21   sentenced to 16 years based upon a joint recommendation from

22   the government and defense counsel.  Mr. LePage at the time

23   that he walked into a bank with a loaded firearm had been

24   convicted in state court of murder.  He had been convicted in

25   state court of armed robbery.  Those two were in conjunction

with one another.  He had been convicted in state court on a
separate occasion of possession of a shotgun as well as
another armed robbery.  He had received sentences of 18 to 20
years on his murder charge, and 19 to 21 on his armed robbery
charge.  He walked into a bank.  He pointed a gun at the back
of a customer's head, robbed that customer, then pointed the
gun at the tellers and robbed the bank and took off with
roughly $21,000.  He received a sentence of 16 years.

Now, the difference here is the government never
found the gun that Mr. LePage used to rob that bank.  So, they
couldn't charge him with 924(c), but make no mistake about it,
the conduct, in my opinion, was much more egregious than this.
Even though Mr. Hamilton discharged the firearm, Mr. LePage
used that firearm to actually rob the bank, pointing it at a
customer's head, and his criminal record was far more
egregious, far, far more egregious than Mr. Hamilton's, and he
received a sentence of 16 years.

Then you have the case of Mr. Lynch Arthur.  Mr.
Lynch Arthur walked in with a co-defendant to I think a Sprint
PCS or some sort of a phone store with firearms -- with what
appeared to be firearms, took the store clerk into a back
room, duct taped her mouth, tied her arms and legs up, and
pointed a gun at her head and robbed her.

Mr. Lynch Arthur had a prior federal conviction where
he was sentenced to eleven and a half years in prison, plus

1   two prior firearms convictions, and he was sentenced to, I

2   believe, 19 years in prison.  More serious record and, again,

3   I would argue, more serious conduct, and he got 19 years.

4           A case that is going to be sentenced, I believe, on

5   Friday is *United States versus Tufts-Raymond*.  Mr. Tufts-

6   Raymond has entered into a plea agreement with the government

7   for a range between seven and 15 years.  Mr. Tufts-Raymond

8   walked into eight banks with a loaded firearm, brandished that

9   loaded firearm and robbed seven of those banks and an

10  attempted robbery on the eighth.

11          Now, Mr. Tufts-Raymond is not a Career Offender, but

12  he does have prior state court convictions for armed robbery

13  and possession of a firearm.  So, very similar to Mr.

14  Hamilton.  The only thing that distinguishes him from Mr.

15  Hamilton is -- and the reason he's not a Career Offender is he

16  doesn't have a state court drug distribution charge that Mr.

17  Hamilton picked up when he was 19 years old, but Mr. Tuft

18  Raymond walked into a bank -- eight banks and robbed them at

19  gunpoint, brandishing that firearm, and his range is seven to

20  15.  Seven is the lowest it can be because he brandished a

21  firearm and the most it can be, which the government is going

22  to recommend, is 15 years.

23          I think those are just a sampling of cases that are

24  similar, if not more egregious, than what Mr. Hamilton did and

25  a range of sentences that have been imposed and there are

1    others that I talk about in my memo.

2           So, I think that a sentence somewhere in the range of

3    twelve years is in keeping with those types of sentences and,

4    certainly, I am hard pressed to see -- although your Honor

5    obviously can do what you wish, I am hard pressed to see how

6    Mr. Hamilton should get more than the 16 years that were

7    imposed on Mr. LePage, who had a prior state homicide

8    conviction, multiple armed robberies and also robbed a bank at

9    gunpoint.

10          Now, I think you have to look at Mr. Hamilton.  Mr.

11   Hamilton when he committed this offense was 24 years old.  His

12   predicates that make him a Career Offender took place when he

13   was 19 years old.  One of those predicates is serious.  It's

14   an armed robbery.  I'm not going to minimize it.  It's a

15   serious offense, but he was also 19 years old and now he's

16   only -- are you 27 or 28?

17          THE DEFENDANT:  28.

18          MR. SINNIS:  -- 28.  He's been here for 44 months.

19   It's been a long time.  He's 28 now, but he was 24 when he

20   committed this offense, and that's another thing that I think

21   -- I didn't write this in my memo, but it also dawned on me.

22          When you look at every one of the defendants in those

23   cases that I cite that have been sentenced in this district,

24   those are gentlemen who were late 40s, early 50s.  Those were

25   gentlemen who had every opportunity to stop.  Those were

1    people who had unrepentant criminal records for 25, 30 years,

2    who clearly were not going to stop.  Those were defendants who

3    had multiple opportunities to show the Court that they were

4    done with their life of criminality.

5           Mr. Hamilton, I say, deserves that one opportunity,

6    an opportunity that's not going to come for a minimum of ten

7    years if your Honor went all the way down to ten, but it

8    certainly should not be an opportunity that is weighted for

9    16, 17, 18, 19 years.  That just seems like we give up now on

10   Mr. Hamilton and that's not necessary.

11          In terms of Mr. Hamilton, it doesn't shine through on

12   the PSR.  It doesn't -- you can't tell from anything here --

13   and maybe it's inappropriate for me to make these comments,

14   but I'll make them, nonetheless.

15          I've known him for almost four years.  That's a long

16   time.  I have visited with him -- I don't know -- 40? -- 40

17   times.  I've sat and talked to him at length for hours.  He is

18   a smart, intelligent, very funny young man, and he has been so

19   vested in his case.  You know, when we were litigating the

20   motion to suppress, he was in the law library.  He was reading

21   cases.  He would call me up.  I would go down.  We would talk

22   cases.  He's smart.  He has a lot of ability.  He hasn't had

23   the opportunity, but he has a lot of ability.  His daughter is

24   here and his girlfriend, Amena (phonetic) Smith, are here.

25          I think a sentence of twelve years encompasses the

1   total conduct here and that's what your Honor has to consider,

2   is a sentence that is reasonable or sufficient, whatever the

3   exact language is, but not more than necessary, and you're

4   allowed to consider the ten years you are forced to impose

5   when you determine what the overall sentence -- when it

6   becomes sufficient.

7          There's going to be a diminishing return on the

8   incarceration of Mr. Hamilton, and the question is where is

9   that line, and that's something I'm sure your Honor struggles

10  with, not just in this case, but in all cases.  Where is the

11  line where there's a diminishing return on the safety to the

12  public, deterrence in general, deterrence specifically, and

13  where are we just going and crossing over into retribution and

14  punishment for punishment sake.

15         I think when you get much above twelve, you're

16  getting into diminishing return.  At a twelve-year sentence,

17  he gets out of prison when he's roughly 35 or 36.  He's on

18  supervision for a number of years.  He's under the control of

19  the U.S. Government for -- until he's roughly 40, but it still

20  gives him an opportunity.  It gives him a chance to use the

21  potential he has and to do something positive and I know he's

22  going to.  I actually firmly believe he is going to do

23  something positive.

24         So, I think for all of those reasons, your Honor,

25  that a sentence of twelve years total is sufficient but not

1   more than necessary.

2           I would ask your Honor, if you would be so inclined,

3   on the restitution aspect of this to defer payment of

4   restitution until such time as he is released from the Bureau

5   of Prisons.

6           I think that's all I have to say, your Honor.

7           THE COURT:  Mr. Hamilton.

8           THE DEFENDANT:  Good morning.

9           THE COURT:  Good morning.

10          THE DEFENDANT:  First I'd like to apologize to those

11  affected on December 16, not just those directly involved, but

12  also indirectly.

13          I thought it would be considerably important to have

14  something to say today that speaks to some of the things --

15  positive things that I've been thinking about since I've been

16  incarcerated, but to tell you the truth, to be perfectly

17  honest with your Honor, the one thing I think about is

18  studying the caselaw and about getting my hands on a result

19  for a favorable outcome for me at trial and get home to my

20  daughter.  It pains me so much to be away from her and it's

21  really the worst that I've experienced in my entire life.  At

22  times I feel like the worst dad ever.  I definitely have a lot

23  of growing to do and a whole lot of changes to make.

24          I spent the last 44 months thinking about my life,

25  where I'm at now and how much I don't want this to be my life.

1    I'm dedicated to change.  I want you to know and my family to

2    know that I'm going to make those changes.  Thank you.

3            THE COURT:  It seems to me that there are a number of

4    issues here.  I am impressed with Mr. Sinnis recounting both

5    in the written argument and in the oral one now of similarity

6    between this case and other cases in this Court.  It's very

7    difficult to find absolute equivalence, and there's no

8    question that Mr. Hamilton's conduct was egregious, but there

9    is a difference between holding a gun at somebody's head and

10   holding a gun to get out of a locked situation.  It was man-

11   trap, right?  Man-trap was the name of this thing.

12           There are, unquestionably, reasons why he became what

13   he did, based on his background and the difficulties he had in

14   his home life, but there were good things about that, too,

15   which weren't taken advantage of by Mr. Hamilton, for sure.

16           He is young and he was very young when he committed

17   this offense and, as our Supreme Judicial Court has said,

18   there's a difference between very young people doing bad

19   things and older people who have more experience doing bad

20   things and the judgment that a young person has compared to

21   that of an older person.  These are all things that I should

22   take into account.

23           I am also impressed with Mr. Hamilton's apparent

24   effort at improving himself.  The brief talks about his

25   reading books and having received his GED.  Even Probation

1    talks about the GED that he received while in state custody.

2    I'm impressed that he maintains regular contact with his

3    daughter, which I'm sure is a difficult thing to do from

4    prison.  I know how much it costs to make telephone calls from

5    there, which is an injustice in itself, I think, but, in any

6    event, these are all good things.

7            I also note that the last 3-1/2 years have not been

8    free of conflict.  There are apparently a number of

9    disciplinary actions that were difficult -- disciplinary

10   punishments for conduct that really is egregious, too.

11           However, looking at the totality, looking at what my

12   colleagues have done in cases that are more or less similar to

13   this, I sentence you to a term of imprisonment of 14 years, a

14   period of supervised release of five years.  The sentence is

15   four years on Counts 1, 2 and 4 to be served concurrently, and

16   ten years on Count 3 to be served consecutively to the

17   sentences imposed on Counts 1, 2 and 4.

18           I note, Mr. Hamilton, that you are entitled to good

19   time credits of 54 days a year if you are free of discipline

20   during that year.  Having already done close to four years --

21   there are ten more years -- 540 days, which amount to not

22   quite year and a half.  So, you have -- that's in your

23   control.  You can reduce the time served that you're actually

24   in prison by that amount of time, but you got to do it.  It

25   won't happen automatically.

1          I will recommend to the Bureau of Prisons that it

2     offer to you whatever counseling, including drug counseling

3     and alcohol counseling, is available, mental health

4     counseling, to the extent available, and you have to ask for

5     that.  It won't happen by itself.  And that you be afforded

6     such courses in education and training and learning life

7     skills as are available as well.

8          Part of the reason for the sentence is also that I am

9     very keenly aware from the number of experiences that I have

10    had with people coming out of jail, that there is a point in

11    time when the person becomes so unused to living without the

12    constant supervision and discipline that a prison necessarily

13    imposes, that it is very difficult and the person is no longer

14    skilled in the ordinary ways in which we have to be skilled to

15    live.  One has to probably relearn how to use a telephone

16    because by that time they will be smarter than ever.  It may

17    be that one has to relearn how to take a subway, how one eats

18    one's meal with what implements, and the longer a person is in

19    prison, of course, the more removed one becomes from the way

20    we live out of prison.

21         So, these are all the reasons, in addition to which I

22    think in order to maintain some parity with the cases that Mr.

23    Sinnis has cited, I think the sentence is appropriate and it

24    is appropriate for all the other reasons I mentioned as well.

25    It is serious punishment and it does remove Mr. Hamilton from

1    doing bad things and protects the public during this time,

2    which he, hopefully, will use to good effect.  So, it

3    certainly should serve as deterrence not only to Mr. Hamilton,

4    but to other people who might be inclined to follow in his

5    steps.  So, that is the sentence of the Court.

6            $400 special assessment, 14 years in prison,

7    including credit.  You will get credit for the time that you

8    have been in custody since your arrest in February of 2011,

9    and a period of five years of supervised release with certain

10   conditions.  They are the mandatory conditions, that you shall

11   not commit any crimes while on supervised release, that you

12   shall not illegally possess any controlled substances.  You

13   shall refrain from the unlawful use of any controlled

14   substances and submit to drug tests as directed by the

15   Probation Office, but they shall not number more than 104 a

16   year.

17           You shall submit to the collection of a DNA sample as

18   directed by Probation, and comply with all the standard

19   conditions of supervised release.

20           You are prohibited under the terms of supervised

21   release from possessing any firearms or other dangerous

22   weapons, and I'm sure you understand that possession of a

23   firearm now is also a felony offense and given your

24   background, you know, it goes geometrically up in terms of

25   punishment.

1     You shall pay restitution to the bank in question in

2     the amount of $4,700.  However, I postpone the payment of that

3     until you start your period of supervised release.

4     So long, however, as this restitution amount is

5     outstanding, you are prohibited from incurring any credit

6     charges or getting -- well, you can get a credit card, but you

7     can't get any -- put any charges on it until this is paid and

8     you can't get a card without first getting permission from the

9     Probation Office to do that.  That is until this amount is paid.

10     To the extent that Probation asks for financial

11     information from you, so long as this amount is outstanding,

12     you shall -- you're required to give them any information

13     about your finances.

14     You shall during your period of supervised release

15     also participate in drug counseling, mental health counseling

16     as directed by Probation, and the drug counseling shall,

17     again, include testing to the extent Probation requests that.

18     Also, if you at that time have the ability to pay for

19     part of this, the cost of the counseling, you shall do that.

20     So, if you have a job, for instance, and you get health

21     insurance through the job, if that covers part of the cost,

22     then you shall participate in paying that.

23     You shall participate in a manualized cognitive

24     behavioral treatment program as directed by Probation, and

25     that may include mood counseling or participation in a -- in

1    the way in which Probation runs that, and that, too, has costs

2    and to the extent you have the ability to pay, you shall pay

3    parts of those costs.

4           You shall use your true name and you are prohibited

5    from using false information about yourself, which includes

6    aliases, false dates of birth, false Social Security numbers,

7    and incorrect places of birth.  I think that's the sum total

8    of it.  Did I miss anything?

9           PROBATION OFFICER SINCLAIR:  Your Honor, just the

10   vocational service training program, is that just the Bureau

11   of Prisons or is that also a condition of supervised release?

12          THE COURT:  The training program I am recommending to

13   the Bureau of Prisons that they make available.  I will order

14   it as a condition of supervised release if Mr. Hamilton wants

15   me to.

16          MR. SINNIS:  Yes, your Honor.

17          THE COURT:  Okay.

18          PROBATION OFFICER SINCLAIR:  Thank you.

19          THE COURT:  So, it's also a further condition of

20   supervised release that you participate in such training

21   programs as Probation may provide.  If at the time we still

22   have CARE and Restart, which are two programs that the Court

23   runs to assist people when they get out of jail in getting

24   back into life, then I hope that you will do it.  They're

25   voluntary.  I would recommend that it be offered to you, but

1    it's up to you to decide whether you want to do them or not.

2              You have the right to appeal from the -- certainly

3    from the sentence.  I suppose from the conviction, too.  And I

4    would ask Mr. Sinnis to file a Notice of Appeal on your

5    behalf, and that's it.

6              And, of course, the government's objections to the

7    sentence are noted and the government may appeal as well.

8              Mr. Marshal, the defendant is now in your custody

9    under sentence of the Court.

10             MR. SINNIS:  Thank you, your Honor.

11             THE COURT:  Mr. Shine, I've never seen you more

12   dejected.

13             MR. SHINE:  I'm sorry.  I'm never critical of your

14   Honor.

15             THE COURT:  I'm sorry?

16             MR. SHINE:  I'm never critical of you, your Honor.

17             THE COURT:  We are adjourned.

18             (Adjourned, 10:11 a.m.)

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E

2            I, Catherine A. Handel, Official Court Reporter of the

3    United States District Court, do hereby certify that the

4    foregoing transcript, from Page 1 to Page 25, constitutes to the

5    best of my skill and ability a true and accurate transcription of

6    my stenotype notes taken in the matter of Criminal Action No.

7    11-10133-RWZ, United States of America versus Anthony M.

8    Hamilton.

9

10
     December 31, 2014       /s/Catherine A. Handel
11   Date                    Catherine A. Handel, RPR-CM, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```